## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| INTEGRATED SENSING SYSTEMS, INC., | Civil Action No. 19-cv-10041 |
| Plaintiff, | Honorable Denise Page Hood |
| v. | Magistrate Judge Elizabeth A. Stafford |
| ABBOTT LABORATORIES, ST. JUDE MEDICAL, LLC, CARDIOMEMS LLC, AND ABBOTT LABORATORIES INC., | |
| Defendants. | |

## DEFENDANTS' MOTION TO STAY PENDING INTER PARTES REVIEW OF U.S. PATENT NO. 6,926,670

PLEASE TAKE NOTICE that, Defendants Abbott Laboratories ("Abbott Labs"), St. Jude Medical, LLC ("St. Jude"), CardioMEMS LLC ("CardioMEMS"), and Abbott Laboratories Inc. ("ALI") (collectively "Abbott") respectfully move this Court to stay this case pending resolution of inter partes review of the asserted patent, U.S. Patent No. 6,926,670.

Under L.R. 7.1, Defendants explained the motion and its legal basis to Plaintiff's counsel in an email and requested but did not obtain concurrence in the relief sought.

In support of this Motion, Defendants rely upon and incorporate by reference herein the facts and legal arguments in the accompanying Memorandum of Law, the Declaration of S. Giri Pathmanaban and supporting exhibits, and any evidence or argument that may be presented at a hearing on this matter.

Dated: July 17, 2019                        Respectfully submitted,

By  _/s/ S. Giri Pathmanaban_

Attorneys for Defendants
ABBOTT LABORATORIES, ST.
JUDE MEDICAL, LLC, ABBOTT
LABORATORIES, INC., AND
CARDIOMEMS LLC

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| INTEGRATED SENSING SYSTEMS, INC., | Civil Action No. 2:19-cv-10041-DPH-EAS |
| *Plaintiff,* | Honorable Denise Page Hood |
| v. | Magistrate Judge Elizabeth A. Stafford |
| ABBOTT LABORATORIES, ST. JUDE MEDICAL, LLC, CARDIOMEMS LLC, AND ABBOTT LABORATORIES INC., | |
| *Defendants.* | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO STAY PENDING *INTER PARTES* REVIEW OF U.S. PATENT NO. 6,926,670

## STATEMENT OF ISSUES PRESENTED

District courts "have the broad discretion to determine whether a stay is appropriate" pending the institution of an inter partes review ("IPR") proceeding. *Cequent Performance Prods., Inc. v. Hopkins Mfg. Corp.*, No. 13-cv-15293, 2015 WL 1510671, at *1 (E.D. Mich. Apr. 1, 2015).  A court considers three factors in deciding whether to stay an action pending the IPR: "(1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party." *Id.*  Is a stay pending the IPRs of the '670 patent appropriate when: (1) the litigation is in its infancy; (2) the IPRs will likely simplify the issues (or even moot this litigation altogether) as Abbott seeks review of all relevant claims; and (3) ISS will not suffer undue prejudice as it delayed bringing suit for several years and, if necessary, can be sufficiently compensated with monetary damages?

<u>**CONTROLLING OR MOST APPROPRIATE AUTHORITIES**</u>

**I.     THREE FACTOR TEST FOR STAYING LITIGATION
        PENDING  INTER PARTES REVIEW**

*Cequent Performance Prods., Inc. v. Hopkins Mfg. Corp.*, No. 13-cv-15293, 2015 WL 1510671, at *1 (E.D. Mich. Apr. 1, 2015) ("When reviewing the Motion to Stay, the Court considers three factors: (1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party.") (citations and internal quotation marks omitted).

**A.     Stage of Litigation**

*Cequent*, 2015 WL 1510671, at *2-3 ("The first factor . . . recognizes that granting a stay early in the case preserves judicial resources and saves the parties time and money. . . .  While Cequent argues that the parties have already spent meaningful time and effort in this case, there is still a significant amount of work ahead of the parties and the Court.").

*Orbital Australia Pty v. Daimler AG*, No. 15-CV-12398, 2015 WL 5439774, at *2 (E.D. Mich. Sept. 15, 2015) ("In this case, discovery is far from complete as no depositions have been taken and no experts have been identified.  No claim construction briefing has taken place and no *Markman* hearing has been scheduled. . . . The current procedural posture of this case, which is clearly in its infancy, favors entering the stay.").

*St. Martin Invs., Inc. v. Bandit Indus., Inc.*, No. 1:17-cv-472, 2017 WL 6816506, at *1 (W.D. Mich. Aug. 30, 2017) ("The first factor favors Bandit's motion to stay the case.  This litigation is just getting under way.  No Rule 16 scheduling conference has been held, no Case Management Order has issued, and very little

discovery has been conducted.").

### B.   Simplification of Issues

*Cequent*, 2015 WL 1510671, at *3 ("The Court finds that a stay pending the IPRs could simplify the issues in this case, and therefore this factor favors granting the requested stay.   The currently-constructed IPRs—which may be amended—concern all three patents-in-suit, and challenge all but seven (and potentially all, if amendment is allowed) of the asserted claims.   The IPRs could thus eliminate the need for discovery, *Markman* proceedings and trial on any cancelled claims. Moreover, the Board's expert analysis on any surviving claims may provide guidance to the Court and could simplify the issues in this case.").

*Orbital*, 2015 WL 5439774, at *2 ("The PTAB may invalidate certain claims as unpatentable based on the petitions pending, thus potentially eliminating portions of this litigation, or at least streamlining it. . . .   Since the PTAB has not yet ruled on whether to institute *inter partes* review and its decision is expected by January, 2016, this court shall enter a conditional stay pending a decision by the PTAB as to whether to institute review.").

*St. Martin*, 2017 WL 6816506, at *2 ("[C]ourts have concluded that in some circumstances, granting a stay may still make sense if the PTO has not yet decided to accept the petition. . . .   The standard is not whether IPR may resolve all of the disputed issues, but whether it will simplify the issues.   Even if a few claims are invalidated or cancelled, then the court and the parties will not have to address the validity of infringement as to those claims.") (citation and internal quotation marks omitted).

### C.   Lack of Undue Prejudice or Tactical Advantage

*Cequent*, 2015 WL 1510671, at *3 ("However, Cequent's delay in filing this action contradicts its position that it would be unduly prejudiced by the additional delay of a stay.   The patents-in-suit issued between 2000 and 2002, and as revealed

during conferences with the Court, Hopkins' accused products had been in direct competition with Cequent's products for years before Cequent filed its Complaint.").

*Orbital*, 2015 WL 5439774, at *3 ("Although plaintiffs' amended complaint seeks injunctive relief as to the fuel injector patent, plaintiffs have not sought a preliminary injunction nor indicated any intent to do so.  Thus, a delay in potential money damages relief is not prejudicial where plaintiffs have made no showing that such a delay would cause severe economic harm or risk the destruction of their businesses or insolvency.").

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND .................................................................................................. 2

        A.      Abbott and the Development of the CardioMEMS HF System ........................... 2

        B.      ISS and the '670 Patent ......................................................................................... 2

        C.      Procedural Background ........................................................................................... 2

III.    LEGAL STANDARD ........................................................................................... 4

IV.     A STAY IS WARRANTED ................................................................................. 5

        A.      The Early Stage of the Litigation Favors a Stay ................................................... 5

        B.      A Stay Will Likely Simplify the Issues ................................................................. 6

        C.      A Stay Will Not Unduly Prejudice ISS ................................................................. 9

                1.      ISS delayed bringing suit and any alleged harm can be
                        compensated through monetary damages ................................................... 9

                2.      Abbott promptly filed its IPR petitions and this Motion to
                        Stay ........................................................................................................... 11

                3.      The IPR timeline is short ........................................................................... 12

        D.      The Totality of Circumstances Warrants a Stay ................................................. 13

V.      CONCLUSION ................................................................................................... 13

# TABLE OF AUTHORITIES
## CASES

*Anza Tech., Inc. v. Toshiba Am. Elec. Components Inc.*,
　　No. 17-CV-07289, 2018 WL 4859167 (N.D. Cal. Sept. 28, 2018)..................5

*Cequent Performance Prods., Inc. v. Hopkins Mfg. Corp.*,
　　No. 13-CV-15293, 2015 WL 1510671 (E.D. Mich. Apr. 1, 2015) .......... *passim*

*Cypress Semiconductor Corp. v. GSI Tech., Inc.*,
　　No. 13-CV-02013, 2014 WL 5021100 (N.D. Cal. Oct. 7, 2014) ...................12

*Digital Ally, Inc. v. Enf't Video, LLC*,
　　No. 16-2349, 2018 WL 780555 (D. Kan. Feb. 8, 2018) ................................12

*E.Digital Corp. v. Dropcam, Inc.*,
　　No. 14-cv-04922, 2016 WL 658033 (N.D. Cal. Feb. 18, 2016).......................9

*Everlight Elecs. Co. v. Nichia Corp.*,
　　No. 12-CV-11758, 2013 WL 1821512 (E.D. Mich. Apr. 30, 2013) .................4

*Fresenius USA, Inc. v. Baxter Int'l Inc.*,
　　721 F.3d 1330 (Fed. Cir. 2013) ........................................................................9

*Insituform Techs., Inc. v. Liqui-Force Servs. (USA), Inc.*,
　　No. 08-11916, 2009 WL 1469660 (E.D. Mich. May 26, 2009)......................12

*Lighting Sci. Grp. Corp. v. Shenzhen Jiawei Photovoltaic Lighting Co.*,
　　No. 16-cv-03886, 2017 WL 2633131 (N.D. Cal. June 19, 2017) ...................11

*Magna Elecs., Inc. v. Valeo, Inc.*,
　　No. 14-10540, 2015 WL 10911274 (E.D. Mich. Sept. 30, 2015) ...................11

*Orbital Austl. Pty v. Daimler AG*,
　　No. 15-CV-12398, 2015 WL 5439774 (E.D. Mich. Sept. 15, 2015) ...5, 6, 8, 10

*RGIS, LLC v. WIS Int'l*,
　　No. 14-CV-10207, 2014 WL 12663203 (E.D. Mich. Nov. 18, 2014) ..............4

*Robert Bosch Healthcare Sys., Inc. v. Cardiocom, LLC*,
　　No. C-14-1575, 2014 WL 3107447 (N.D. Cal. July 3, 2014) ..........................11

*SAS Institute, Inc. v. Iancu*,
  138 S. Ct. 1348 (2018) ...................................................................6

*SCA Hygiene Prods. Aktiebolag v. Tarzana Enters., LLC*,
  No. CV 17-04395-LB(JPRx), 2017 U.S. Dist. LEXIS 218330
  (C.D. Cal. Sept. 27, 2017) ..............................................................7

*Serv. Sols. U.S., L.L.C. v. Autel. US Inc.*,
  No. 13-10534, 2015 WL 401009 (E.D. Mich. Jan. 28, 2015) ....................7, 10

*Skip Hop, Inc. v. Munchkin, Inc.*,
  No. CV 15-06339 SJO(AGRx), 2016 WL 7042093
  (C.D. Cal. Mar. 15, 2016) ...............................................................7

*St. Martin Invs., Inc. v. Bandit Industries, Inc.*,  No. 1:17-CV-472,
  2017 WL 6816506 (W.D. Mich. Aug. 30, 2017) ......................................6, 8, 9

## STATUTES

35 U.S.C. § 314(b) ...........................................................................4

35 U.S.C. § 315(e)(2) ........................................................................7

35 U.S.C. § 316(a)(11) .....................................................................4, 12

## RULES

37 C.F.R. § 42.107(b) .......................................................................12

Fed. R. Civ. P. 1 ..............................................................................13

## I.    INTRODUCTION

Defendants Abbott Laboratories ("Abbott Labs"), St. Jude Medical, LLC ("St. Jude"), CardioMEMS LLC ("CardioMEMS"), and Abbott Laboratories Inc. ("ALI") (collectively "Abbott") request that the Court stay this action pending the final resolution of Abbott's petitions for inter partes review ("IPR") of the only asserted patent, U.S. Patent No. 6,926,670 (the "'670 patent").  All three stay factors favor a stay.  A stay will: (1) have minimal impact on this Court's schedule as the litigation is in its infancy; (2) simplify the issues and reduce the burden of litigation on the parties and the Court; and (3) not unduly prejudice Plaintiff Integrated Sensing Systems, Inc. ("ISS") or provide Abbott with an unfair tactical advantage.

First, this litigation is still in its infancy.  Abbott has not yet filed its Answer.  The earliest Abbott will file its Answer (if at all) is after November 6, 2019, when the Court will hear Abbott's Motion to Dismiss the Amended Complaint.  Thus, while the parties will engage in limited venue discovery in the interim, they will not engage in substantive discovery until either the very end of this year or early next year.  The Court has not set any other deadlines for this case.[1]

Second, the IPRs will simplify the issues in this case because the United States Patent and Trial Appeal Board ("PTAB") is likely to invalidate all relevant claims of the asserted patent.  The stay will allow the parties and the Court to avoid dedicating resources to claims that will likely be invalidated in IPR.  And even in the unlikely event that one or more claims survive, the record developed in the IPRs will streamline the case by providing guidance as to issues of claim construction, non-infringement, and invalidity.

Third, ISS will not suffer any undue prejudice from a stay, as it delayed bringing this lawsuit by nearly five years (or longer).  And ISS is not even close to

---

[1] The Court has set a hearing on July 31, 2019 to resolve the parties' dispute relating to the scope of discovery on venue issues.  (*See* ECF No. 23.)  Abbott respectfully requests that the Court continue the hearing of that dispute until the Court resolves this Motion, as a stay of these proceedings may moot the need for venue discovery.

having a device that competes with the accused CardioMEMS HF System. Finally, a stay will not give Abbott any unfair tactical advantage—Abbott filed its IPR petitions and the instant Motion early, before any discovery commenced in this case.

For these reasons, Abbott respectfully requests that the Court stay this action pending the outcome of the IPRs.

## II.   BACKGROUND

### A.   Abbott and the Development of the CardioMEMS HF System

CardioMEMS's mission was to invent a remote heart monitor that could improve and extend the lives of patients with severe heart failure. (Ex. 1, St. Jude's 2014 10-K.) CardioMEMS set out to fulfill that mission with the development of its CardioMEMS HF System. (*Id*.) By 2010, CardioMEMS completed the development of its CardioMEMS HF System and applied for FDA approval. (Ex. 2, FDA Approval.) Abbott Labs acquired CardioMEMS in 2017. (Ex. 2); (Ex. 3, Abbott Labs's 2017 10-K.)

### B.   ISS and the '670 Patent

The '670 patent issued on August 9, 2005 and was assigned to ISS. (ECF No. 15 ¶ 24.) ISS alleges that by 2011 it was developing products under its '670 patent referred to as its TITAN Wireless Implantable Hemodynamic Monitoring ("TITAN WIHM") systems. (ECF No. 15 ¶ 33.) Between 2011 and 2015, ISS purportedly unsuccessfully attempted on multiple occasions to sell its developing TITAN WIHM and MEMS technology to Abbott Labs. (ECF No. 15 ¶¶ 34, 37, 39-40.) The TITAN WIHM system, or any other ISS wireless implantable monitoring system, is not approved for commercial use in this or any other country, despite ISS having allegedly performed a series of promising clinical trials with its TITAN WIHM system. (ECF No. 15 ¶¶ 35-36.); (Ex. 4) (as of 2016, ISS's WIHM was "restricted under United States Federal Law to investigational use only".)

### C.   Procedural Background

On January 4, 2019, nearly five years after the FDA approved the

2

CardioMEMS HF System, ISS filed this Complaint for patent infringement, alleging that the CardioMEMS HF System infringes the '670 patent. (ECF No. 1.) In the Complaint, ISS alleged that it knew of CardioMEMS's supposed infringement of the '670 patent by at least October 2015. (ECF No. 1 ¶ 23.) ISS did not seek a preliminary injunction. ISS served Abbott with the Complaint on January 7, 2019. (ECF No. 3.)

On April 6, 2019, Abbott moved to dismiss the Complaint for improper venue. (ECF No. 12.) In response, ISS filed the Amended Complaint, which alleged additional facts related to venue. (ECF No. 15.) On May 7, 2019, Abbott again moved to dismiss the Amended Complaint for improper venue. (ECF No. 18.) Shortly before the opposition deadline, ISS reached out to Abbott regarding the possibility of venue discovery. (ECF No. 23.) While Abbott agreed to permit limited venue discovery, the parties could not agree as to the scope of the discovery. (*Id.*) As such, the parties submitted the issue to the Court for briefing. (ECF Nos. 24, 26, and 27.) The Court set the hearing date for the venue discovery dispute for July 31, 2019. (ECF No. 23.) The Court has also set the hearing date for Abbott's Motion to Dismiss the Amended Complaint for November 6, 2019. (*Id.*)

The parties and the Court will not expend significant resources on this litigation for several more months. The Court has not yet set a date for the case management conference or otherwise set a case schedule. While the parties will engage in limited venue discovery related to Abbott's Motion to Dismiss, discovery related to the substance of the parties' claims will not begin until sometime after November 6, 2019, when the Court hears arguments on Abbott's Motion to Dismiss. Thus, substantive fact discovery will not begin in earnest until either the end of this year, or early next year.

On July 15, 2019, six months after service of the Complaint, Abbott filed two IPR petitions with the PTAB challenging the validity of the only independent claim and fifteen of the remaining thirty dependent claims of the '670 patent. (Exs. 5-6,

IPR Petitions.)   Abbott's IPR petitions set forth detailed and specific bases for invalidity under 35 U.S.C. § 102 and 103, and are based on several critical pieces of prior art that were not considered by the Patent Office.  (*Id*.)  While the Court need not substantively address the merits of the petitions, it can note that the petitions are thorough, comprehensive, and straightforward.  The PTAB's institution decisions will be no later than February 2020, approximately six months from the expected petition filing date notices, and before most substantive fact discovery has occurred in this case.  *See* 35 U.S.C. § 314(b).  If instituted, the PTAB will issue final decisions on invalidity by February 2021.  35 U.S.C. § 316(a)(11).

## III.   LEGAL STANDARD

District courts "have the broad discretion to determine whether a stay is appropriate" pending the institution of an inter partes review proceeding.  *Cequent Performance Prods., Inc. v. Hopkins Mfg. Corp.*, No. 13-CV-15293, 2015 WL 1510671, at *1 (E.D. Mich. Apr. 1, 2015) (citation omitted).  A stay may be appropriate when the IPR has the potential to "eliminate the need for discovery, Markman proceedings and trial on any cancelled claims" as well as provide "the Board's expert analysis on any surviving claims[.]"  *Cequent*, 2015 WL 1510671.  This District has recognized that "[t]here is a liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexaminations or reissuance proceedings."  *RGIS, LLC v. WIS Int'l*, No. 14-CV-10207, 2014 WL 12663203, at *1 (E.D. Mich. Nov. 18, 2014) (quoting *Everlight Elecs. Co. v. Nichia Corp.*, No. 12-CV-11758, 2013 WL 1821512, at *7 (E.D. Mich. Apr. 30, 2013)).

A court considers three factors in deciding whether to stay an action pending IPR: "(1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party."  *Cequent*, 2015 WL 1510671, at *1 (citation omitted).

## IV.    A STAY IS WARRANTED

Each of the three factors strongly weighs in favor of a stay.

### A.    The Early Stage of the Litigation Favors a Stay

This factor weighs heavily in favor of a stay because this case is in its infancy. A court's analysis of the stage of litigation "considers whether discovery is complete and whether a trial date has been set." *Orbital Austl. Pty v. Daimler AG*, No. 15-CV-12398, 2015 WL 5439774, at *2 (E.D. Mich. Sept. 15, 2015). "This factor recognizes that granting a stay early in the case preserves judicial resources and saves the parties time and money." *Cequent*, 2015 WL 1510671, at *2. "A stay is particularly appropriate for cases in the initial stages of litigation or in which there has been little discovery." *Anza Tech., Inc. v. Toshiba Am. Elec. Components Inc.*, No. 17-CV-07289, 2018 WL 4859167, at *1 (N.D. Cal. Sept. 28, 2018) (citation and quotation marks omitted).

Here, the Court and the parties are at the earliest stage of the litigation and have expended minimal resources.  Abbott has not answered ISS's Complaint.  The Court has not set the case management conference.  The parties will not engage in any of the discovery related to the substantive merits of their claims—infringement and invalidity contentions, claim construction, fact depositions, and expert discovery—until after November 2019, when the Court will hear Abbott's Motion to Dismiss.  And while the Court and the parties will have expended some resources on Abbott's Motions to Dismiss and venue discovery (ECF Nos. 18 and 23-27), "there is still a significant amount of work ahead of the parties and the Court." *Cequent*, 2015 WL 1510671, at *1.

Many courts have found this factor favors a stay even when the parties have advanced further in the litigation than here.  The court in *Orbital* found this factor weighed in favor of granting a stay even when the parties had "exchanged voluminous paper discovery," "claim construction positions[,] and invalidity contentions" because the majority of the work—claim construction briefing,

depositions, and close of fact discovery—was still to come.  2015 WL 5439774, at *2.  Likewise in *Cequent*, the court found that the stage of the litigation favored a stay because the parties had not engaged in claim construction, expert discovery, or substantial motion practice.  2015 WL 1510671, at *2.  The court further recognized that, despite discovery having commenced, fact discovery did not close for another five months and trial was a year away.  *Id.*  In *St. Martin Investments, Inc. v. Bandit Industries, Inc.*, the court found this first factor weighed in favor of a stay when "[n]o Rule 16 scheduling conference has been held, no Case Management Order has issued, and very little discovery has been conducted."  No. 1:17-CV-472, 2017 WL 6816506, at *1 (W.D. Mich. Aug. 30, 2017).  The court concluded that a stay would "prevent duplicative discovery and mitigate litigation costs to the parties."  *Id.*

At the time of the institution decisions, the parties and Court will have only expended minimal resources on Abbott's Motions to Dismiss and limited venue discovery.  Consequently, the entire litigation remains ahead of the parties and the Court, and this factor weighs in favor of a stay.  *Cequent*, 2015 WL 1510671, at *2 (finding this factor weighed in favor of a stay despite "the parties hav[ing] already spent meaningful time and effort in this case, [because] there is still a significant amount of work ahead of the parties and the Court").

**B.    A Stay Will Likely Simplify the Issues**

A stay will likely simplify, or even eliminate, the issues in this litigation. There are several recognized benefits of stays pending IPR.  First, waiting for the outcome of the IPR "may streamline this litigation, or potentially eliminate it" by invalidating or narrowing the claims of the challenged patents.  *Orbital*, 2015 WL 5439774, at *2.  Importantly, under the Supreme Court's ruling in *SAS Institute, Inc. v. Iancu*, should the PTAB institute review, then it is statutorily required to address the validity of every challenged claim.  138 S. Ct. 1348, 1354 (2018).  Here, Abbott petitioned review of all potentially relevant claims of the only asserted patent.  The PTAB's decisions could thus moot, or at least narrow, the parties' claims and

counterclaims.  And while Abbott did not challenge every single claim of the '670 patent, an IPR review "need not dispose of a case completely to simplify the issues of a case."  *Serv. Sols. U.S., L.L.C. v. Autel. US Inc.*, No. 13-10534, 2015 WL 401009, at *3 (E.D. Mich. Jan. 28, 2015).

Second, regardless of whether the IPR is instituted, the IPR record becomes part of the patent's intrinsic record, and a more wholesome intrinsic record may inform issues of claim construction or estoppel.  *Skip Hop, Inc. v. Munchkin, Inc.*, No. CV 15-06339 SJO(AGRx), 2016 WL 7042093, at *3 (C.D. Cal. Mar. 15, 2016). In the unlikely event that the PTAB does not cancel all of the challenged claims of the '670 patent, the IPR record would still provide helpful insight on claim construction and estoppel issues.

Third, even in the unlikely event that the PTAB institutes review and affirms the validity of the challenged claims, the proceedings will still finally resolve at least some issues of validity because an IPR petitioner may not assert "that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that inter partes review."  35 U.S.C. § 315(e)(2).  Here, if the PTAB institutes review and the claims survive, the case would still be simplified because Abbott would be limited in which invalidity arguments it could raise before this Court.

Fourth, "the Court will benefit from the U.S. Patent Trial and Appeal Board's expertise in determining the parties' claims regarding this patent."  *Serv. Sols.*, 2015 WL 401009, at *3.  The possibility of simplification "is particularly true where . . . a party has requested reexamination of each of the patents-in-suit."  *SCA Hygiene Prods. Aktiebolag v. Tarzana Enters., LLC*, No. CV 17-04395-LB(JPRx), 2017 U.S. Dist. LEXIS 218330, at *10 (C.D. Cal. Sept. 27, 2017).  Regardless of whether the PTAB institutes the IPRs here, the Court would benefit from the PTAB's expert evaluation of invalidity and claim construction issues.

That the PTAB has not yet instituted the IPRs does not mean that a stay would be improper now.  Courts in this District and neighboring districts have granted stays

pending the PTAB's institution decision. *Orbital*, 2015 WL 5439774, *2-4 (granting a stay pending a requested but not yet granted petition for IPR); *Cequent*, 2015 WL 1510671 (same); *St. Martin*, 2017 WL 6816506 (same). Those courts recognized that the risk that the PTAB would not institute review was counterbalanced with the fact that "the stay will [] be for a relatively modest period of time if the PTO decides not to initiate review." *St. Martin*, 2017 WL 6816506, at *2. Additionally, a pre-institution stay "would avoid potentially wasteful discovery while narrowing the claims and defenses in the case." *Cequent*, 2015 WL 1510671, at *3 (citation omitted).

*St. Martin* and *Orbital* are particularly instructive. In *St. Martin*, the defendant moved for a pre-institution stay pending its IPR petition that challenged some, but not all of the asserted patent's claims. 2017 WL 6816506, at *2. The court found that a stay pre-institution was warranted because "discovery has yet to get going in earnest, no preliminary injunction has been filed, and a trial date is still many months away." *Id.* (citation omitted). The court further recognized that if the PTAB declined the petition, "the stay will quickly be lifted resulting in little delay. However, if the USPTO accepts the IPR petition[], the continuation of this litigation will likely result in the unnecessary expenditure of the parties' and court's time and resources[.]" *Id.* (citation and internal quotation marks omitted).

Similarly, in *Orbital*, the court found that staying the case pre-institution would be beneficial, since the IPR review could "potentially eliminate[] portions of this litigation, or at least streamlin[e] it," or at a minimum, provide the court with the PTAB's guidance on these issues. 2015 WL 5439774, at *2. The court thus entered a conditional stay pending the PTAB's institution decision, which was expected to issue in four months. *Id.*

This Court should do the same here. This is a single patent case, and Abbott

has challenged all the relevant claims of the '670 patent.[2]  If the PTAB invalidates them, the entire case will be moot, or at a minimum significantly streamlined.  And "[e]ven if a few claims are invalidated or cancelled, then the court and the parties will not have to address the validity of infringement as to those claims." *St. Martin*, 2017 WL 6816506, at *2.  Staying the litigation now while some of Abbott's invalidity defenses are argued before the PTAB will save the Court and parties substantial resources.  If the Court waits, however, for the PTAB to accept the IPR petitions to determine the propriety of a stay, it risks needlessly wasting its resources because the IPRs could "render the issues raised in [this] litigation moot." *Fresenius USA, Inc. v. Baxter Int'l Inc.*, 721 F.3d 1330, 1340 (Fed. Cir. 2013).  And even if the PTAB declines to institute proceedings, the stay would last at most until February 2020—a mere three months from the date on which the Court is scheduled to hear Abbott's Motion to Dismiss.

Thus, the likelihood that the IPR petitions will significantly simplify this litigation outweighs the unlikely risk that the PTAB will not institute come February 2020. This factor thus supports a stay.

### C.     A Stay Will Not Unduly Prejudice ISS

No undue prejudice or tactical disadvantage to ISS will result from a stay.  In determining whether a plaintiff might be unduly prejudiced by a stay, courts may consider factors such as (1) the relationship between the parties, (2) the timing of the IPR request and the timing of the request for a stay; and (3) the status of PTO proceedings. *E.Digital Corp. v. Dropcam, Inc.*, No. 14-cv-04922, 2016 WL 658033, at *4 (N.D. Cal. Feb. 18, 2016).

### 1.     ISS delayed bringing suit and any alleged harm can be compensated through monetary damages

The relationship between the parties shows that a stay will not unduly

---

[2] ISS has no good-faith basis to assert any of the unchallenged claims in this litigation.

prejudice ISS for at least four reasons.

First, ISS delayed bringing suit for several years. A plaintiff's "delay in filing [suit] contradicts its position that it would be unduly prejudiced by the additional delay of a stay." *Cequent*, 2015 WL 1510671, at \*3. Here, the accused CardioMEMS HF System received FDA approval in May 2014. (Ex. 2.) ISS even alleges that it knew of CardioMEMS's supposed infringement as early as October 2015. (ECF No. 15 ¶ 38.) ISS, however, does not allege contacting CardioMEMS regarding the alleged infringement or pursuing any legal course of action against them until this suit in 2019. This five-year delay militates against any arguments that ISS will be unduly prejudiced by the stay. *Orbital*, 2015 WL 5439774, at \*3 (finding no undue prejudice when the accused product had been on the market for six years).

Second, ISS does not compete with Abbott. While ISS alleges to have been developing the TITAN WIHM system under its '670 patent as early as 2011, the FDA has not approved the marketing or sale of the TITAN WIHM system. Sales of Abbott's CardioMEMS HF System thus do not compete with any ISS product on the market. (Ex. 4) (as of 2016, ISS's WIHM was "restricted under United States Federal Law to investigational use only").[3] In any event, ISS delayed bringing suit for over five years, and thus could not genuinely complain of prejudice by a short stay, even if the parties *were* competitors (which they are not). *Cequent*, 2015 WL 1510671, at \*3 (finding no undue prejudice when parties were direct competitors because "[plaintiff's] delay in filing this action contradicts its position that it would be unduly prejudiced by the additional delay of a stay"); *Serv. Sols.*, 2015 WL 401009, at \*3 (declining to find prejudice even though parties were direct competitors because plaintiff "has not aggressively prosecuted this litigation").

---

[3] Based on searches of public FDA databases, it does not appear that ISS has filed even a request for FDA approval of its TITAN WIHM, or any other wireless implantable monitoring device.

Third, that ISS never moved for a preliminary injunction belies any claims of undue prejudice. *Lighting Sci. Grp. Corp. v. Shenzhen Jiawei Photovoltaic Lighting Co.*, No. 16-cv-03886, 2017 WL 2633131, at *4 (N.D. Cal. June 19, 2017) ("[T]his shows that, even if [ISS] were prejudiced by a stay, it could be later made whole by money damages.").

Fourth, ISS alleges that it was willing to sell its patented technology to Abbott in the past. (ECF No. 15 ¶¶ 34, 37, 39-40.) This further undermines any claims of prejudice. *Robert Bosch Healthcare Sys., Inc. v. Cardiocom, LLC*, No. C-14-1575, 2014 WL 3107447, at *7 (N.D. Cal. July 3, 2014) ("[Plaintiff's] past licensing practices also tend to undermine its claim of special harm due to the parties' competitive relationship.").

The relationship between the parties here is also distinguishable from that in *Magna Elecs., Inc. v. Valeo, Inc.*, No. 14-10540, 2015 WL 10911274, at *2 (E.D. Mich. Sept. 30, 2015). There, the parties were direct competitors and there was a risk the plaintiff could lose market share during the stay. *Id*. at *2. This Court held that "delay of the patent case is prejudicial to Plaintiff since competition and damages are at issue." *Id.* Not so here. ISS does not sell any product that competes with the accused CardioMEMS HF System. There is no risk that ISS will lose any market share due to sales of Abbott's CardioMEMS HF System. Further, *Magna* did not involve a plaintiff who delayed filing suit for many years like ISS did here.

ISS's five-year delay in bringing suit and its attempts to sell its developing technology to Abbott thus negate any argument that ISS will suffer undue prejudice from a brief stay.

### 2.    Abbott promptly filed its IPR petitions and this Motion to Stay

Abbott did not delay in filing its IPR petitions or this Motion to Stay. Rather, Abbott filed its IPR petitions very early in the case—before it filed its Answer and Counterclaims, before the Court even set the case schedule, and before the parties

conducted any discovery.  Specifically, the Complaint was served on January 7, 2019, and Abbott then filed its IPR petitions on July 15, 2019—well within the one-year statutory deadline.  Abbott's counsel then met and conferred with ISS regarding its intention to move to stay on July 15.  Abbott filed this motion shortly thereafter, roughly six months after ISS filed its Complaint in January 2019 and two days after Abbott filed its IPR petitions.

The promptness of Abbott's IPR petitions and Motion to Stay negates any delay alleged by ISS.  *See, e.g.*, *Cypress Semiconductor Corp. v. GSI Tech., Inc.*, No. 13-CV-02013, 2014 WL 5021100, at *4 (N.D. Cal. Oct. 7, 2014) (finding no undue prejudice when defendant filed IPR petition more than six months after the complaint filing).

### 3.    The IPR timeline is short

Although the IPR petitions were only recently filed, the early stage of the IPR process is counterbalanced by the tightly circumscribed timeline for the proceedings. As described in Section IV(B), the PTAB will decide whether to institute the IPRs by February 2020, six months from the expected petition filing date notices.  ISS can expedite that timeframe either by foregoing its preliminary responses or by filing them early.  *See* 37 C.F.R. § 42.107(b).  Once instituted, the IPRs should be completed within a year (if not sooner).  *See* 35 U.S.C. § 316(a)(11).  Thus, a stay will cause only minimal delay.  Moreover, delay in the IPR process by itself does not amount to undue prejudice.  *Insituform Techs., Inc. v. Liqui-Force Servs. (USA), Inc.*, No. 08-11916, 2009 WL 1469660, at *2 (E.D. Mich. May 26, 2009) ("[T]he delay inherent to the reexamination process does not constitute, by itself, undue prejudice.") (citation and quotation marks omitted); *Digital Ally, Inc. v. Enf't Video, LLC*, No. 16-2349, 2018 WL 780555, at *3 (D. Kan. Feb. 8, 2018) (delay inherent to IPR proceedings "does not constitute, by itself, undue prejudice").

In sum, ISS will not be unduly prejudiced should the Court grant a stay

pending the resolution of the IPRs.

### D.     The Totality of Circumstances Warrants a Stay

The totality of circumstances here warrants granting a stay.  As discussed above, all three factors weigh heavily in favor of a stay.  And a stay would help the Court ensure "a just, speedy, and inexpensive determination of [the] action."  *See* Fed. R. Civ. P. 1 ("[The federal rules] should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").  In exchange for a relatively short pause in the proceedings—three months from the hearing for Abbott's Motion to Dismiss—the Court and parties could save a significant, and otherwise unnecessary, expenditure of time and resources.  Moreover, if instituted, the pending IPRs—which address all relevant claims of the '670 patent—will likely dispose of the entire case, or at minimum, narrow the scope and complexity of the litigation.  And, unlike in other cases, ISS will suffer no undue prejudice, since it is just now bringing suit on a patent it sat on for more than five years.  Accordingly, a stay is appropriate here.

### V.    CONCLUSION

For the foregoing reasons, Abbott respectfully requests the Court grant its Motion to Stay Pending Inter Partes Review of the '670 patent.

Dated: July 17, 2019

Respectfully submitted,

By */s/ S. Giri Pathmanaban*

ZAUSMER, AUGUST &
CALDWELL, P.C.
Mark, M. Bassily (P76631)
mbasily@zacfirm.com
Mark J. Zausmer (P31721)
mzausmer@zacfirm.com
32255 Northwestern Highway
Suite 225
Farmington Hills, MI  48334
Tel. (248) 851-4111
Fax. (248) 851-0100

LATHAM & WATKINS LLP
S. Giri Pathmanaban
giri.pathmanaban@lw.com
140 Scott Drive
Menlo Park, CA  94025
Tel. (650) 328-4600
Fax: (650) 463-2600

LATHAM & WATKINS LLP
Michael A. Morin
michael.morin@lw.com
Tara D. Elliott
tara.elliott@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Tel. (202) 637-2200
Fax: (202) 637-2201

*Attorneys for Defendants*
ABBOTT LABORATORIES, ST.
JUDE MEDICAL, LLC, ABBOTT
LABORATORIES, INC., AND
CARDIOMEMS LLC

14

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 17, 2019, I caused the foregoing to be electronically, filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

By: */s/ S. Giri Pathmanaban*
LATHAM & WATKINS LLP
S. Giri Pathmanaban
giri.pathmanaban@lw.com
140 Scott Drive
Menlo Park, CA  94025
Tel. (650) 328-4600
Fax: (650) 463-2600