# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

INTEGRATED SENSING
SYSTEMS, INC.,

        Plaintiff,                     CASE NO. 19-10041

v.                                   HON. DENISE PAGE HOOD

ABBOTT LABORATORIES,
ABBOTT LABORATORIES, INC.,
ST. JUDGE MEDICAL, LLC, and
CARDIOMEMS LLC,

        Defendants.

_____/

## ORDER GRANTING MOTION TO STAY
## PENDING INTER PARTES REVIEW [#28]
## and STAYING THE CASE

**I.    INTRODUCTION**

On January 4, 2019, Plaintiff filed the instant action against Defendants, alleging that Defendants' CardioMEMS HF System infringes Plaintiff's patent, U.S. Patent No. 6,926,670 (the "'670 patent"). After Defendants filed a Motion to Dismiss, Plaintiff filed an Amended Complaint, to which Defendants filed a second Motion to Dismiss. Plaintiff then filed a Motion for Leave to Seek Contested Venue Discovery, and Defendants filed a Motion to Stay Pending *Inter Partes* Review of the '670 patent ("Motion to Stay"). ECF No. 28. The Motion to Stay has been fully briefed. The

issues in the Motion to Stay have been adequately presented in the parties' briefs, such that oral arguments are not necessary. *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons set forth below, the Court GRANTS the Motion to Stay.

## II. BACKGROUND

For purposes of deciding the Motion to Stay, the Court adopts Plaintiff's version of the background of this matter, as follows. Utilizing the '670 patent issued on August 9, 2005, by 2011, Plaintiff had developed wireless MEMS implantable hemodynamic monitoring devices under the brand name TITAN, and sometimes referred to as the TITAN Wireless Implantable Hemodynamic Monitoring ("TITAN WIHM") system. Plaintiff performed a series of preclinical studies using its patented TITAN WIHM system during the development and testing of its technology in the U.S. and Europe, and Plaintiff performed human clinical trials in Europe using its patented TITAN WIHM system starting in June 2013.

Plaintiff claims its human clinical trials exhibited promising results for the potential prevention of complications after cardiac surgery and for the long-term management of patients with congestive heart failure and other chronic cardiac diseases. Plaintiff also claims that the trials showed that theTITAN WIHM devices could be safely, easily, and rapidly implanted, while reliably working with a monitor to record physiologic parameters of the patient both at home and at medical facilities.

2

Plaintiff completed the first part of its clinical trials in 2015, with the final report following in 2017.

Plaintiff presented the results of its clinical trials at numerous conferences in the U.S. and around the world, and entered into discussions regarding Plaintiff's WIHM and MEMS patented technology with Defendant Abbott Laboratories ("Abbott") at the end of 2014. In 2014 and 2015, Abbott did not have a competing heart failure monitoring system and showed interest Plaintiff's WIHM and MEMS technology. During that time, Plaintiff focused on trying to negotiate with Abbott. About the same time (in 2014, several years prior to Abbott's acquisition of Defendant St. Jude Medical, LLC ("St. Jude") in early 2017), St. Jude had just purchased CardioMEMS LLC.

On January 4, 2017, Abbott finalized its acquisition of St. Jude for $25 billion, including St. Jude's subsidiary, CardioMEMS LLC ("CardioMEMS"), and the CardioMEMS HF System became part of Abbott's product portfolio. Accordingly, Abbott went from a potential partner to a potential competitor in the implantable wireless heart failure monitor device market. Plaintiff engaged in further discussions with Abbott during 2017 regarding Plaintiff's patented technology, even after Plaintiff completed its final report on clinical studies for its TITAN WIHM device in Europe. Those discussions did not result in any transaction.

On March 29, 2018, Abbott announced the so-called GUIDE-HF large-scale clinical trial involving over 3,500 patients using the CardioMEMS HF System, including patients at Providence Hospital in Southfield, Michigan. At this time, Plaintiff is in the process of obtaining its CE Mark certification to sell its TITAN WIHM devices in Europe, which Plaintiff expects to take about 6-8 months. If Plaintiff obtains that certification, both Plaintiff and Abbott will be manufacturing and shipping competing products from the U.S. for sale in Europe.

On January 4, 2019, Plaintiff filed its original Complaint against Defendants, but Plaintiff did not immediately serve the Complaint on Abbott so that the parties could engage in further licensing and/or settlement talks. When efforts to resolve the case early were unsuccessful, Plaintiff served the Complaint on February 14, 2019. After Plaintiff agreed to give Defendants additional time to respond to the Complaint, Defendants moved to dismiss the Complaint for improper venue on April 6, 2019. On April 23, 2019, Plaintiff filed an Amended Complaint, adding Defendant Abbott Laboratories Inc. ("ALI") as a defendant and included new venue-related factual allegations.

On May 7, 2019, Defendants filed a motion to dismiss the Amended Complaint. Plaintiff requested venue discovery and as a part of the meet and confer process, Abbott agreed to provide some, but not all, of the requested venue discovery. On

4

May 28, 2019, the parties filed a joint stipulation regarding venue-related discovery and a briefing schedule to Defendants' motion to dismiss, which the Court entered on June 5, 2019. The parties fully briefed the contested venue discovery, and the Court set a hearing of August 14, 2019 to resolve the remaining disputed venue discovery.

On July 15, 2019, Defendant filed its two petitions for *Inter Partes* Review ("IPR"), each challenging the '670 patent. Plaintiff has three months from the Notice of Filing Date Accorded to submit its Patent Owner preliminary response (October 26, 2019). The United States Patent and Trial Appeal Board ("PTAB") must then issue a decision on institution of Defendants' IPR petitions three months after Plaintiff's Patent Owner preliminary response. 35 U.S.C. § 314(b)(1). The PTAB is expected to issue a decision on whether to institute Defendants' IPR petitions on or about January 26, 2020.

## III. ANALYSIS

District courts "have the broad discretion to determine whether a stay is appropriate" pending the institution of an IPR proceeding. *Cequent Performance Prods., Inc. v. Hopkins Mfg. Corp.*, 2015 WL 1510671, at *1 (E.D. Mich. Apr. 1, 2015) (citation omitted). A court considers three factors in deciding whether to stay an action pending the institution of an IPR: (1) the stage of the litigation, (2) whether the stay will simplify the issues or present a clear tactical disadvantage to the

nonmoving party, and (3) whether a stay would unduly prejudice the nonmoving party. *See, e.g., Magna Elecs., Inc. v. Valeo, Inc.*, 2015 U.S. Dist. Lexis 133194, at *2 (E.D. Mich. Sept. 30, 2015). The Court concludes that all three factors support granting the Motion to Stay.

### A. First Factor

Although some courts have concluded that a case in the early stages of litigation weighs favors the denial of a stay pending the outcome of IPR petitions,[1] many other courts have been persuaded that the fact that a case is in preliminary stages weighs in favor of staying the case.[2] The Court finds that the very limited litigation in this case weighs heavily in favor of staying the case pending the outcome of the IPR petitions filed by Defendants.

This case is in its preliminary stages, and a stay would have limited impact on the progress of the case. No case management conference has been held, no scheduling order has been issued, no trial date has been set, and Defendants have not

---

[1] *See, e.g., BOS GmbH & Co. KG et al. v. Macauto USA*, No. 4:17-cv-10461, ECF No. 29 at 3 (E.D. Mich. Feb. 13, 2018); *Magna Elecs.*, 2015 U.S. Dist. LEXIS 133194, at *2; *Everlight Elecs. Co., Ltd. et al v. Nichia, Corp.*, No. 4:12-cv-11758, 2013 U.S. Dist. LEXIS 61666, at *28 (E.D. Mich. April 30, 2013).

[2] *See, e.g., St. Martin Invs., Inc. v. Bandit Indus., Inc.*, No. 1:17-cv-472, 2017 WL 6816506, at *1 (W.D. Mich. Aug. 30, 2017); *Cequent*, 2015 WL 1510671, at **2-3; *Orbital Australia Pty v. Daimler AG*, No. 15-CV-12398, 2015 WL 5439774, at *2 (E.D. Mich. Sept. 15, 2015).

even answered Plaintiff's Amended Complaint.

Even if the case is not stayed, Defendants have filed a Motion to Dismiss and Plaintiff has moved for leave to seek contested venue discovery, all of which will cause the parties and the Court to expend significant resources to argue and decide the Motion for Leave to Seek Contested Venue Discovery, conduct venue discovery, and address the Motion to Dismiss. The pending Motion to Dismiss will not be heard until November 6, 2019, meaning it will not be decided until a date close in time to when the PTAB announces whether it will institute Defendant's IPR petitions (approximately January 26, 2020). Substantive discovery, if necessary, would not commence until that time. Finally, because the case is at a preliminary stage, staying the case would not waste significant efforts of the party, as the overwhelming bulk of the work on the cases lie ahead of the parties and the Court.

The Court concludes that the very preliminary stage of this case weighs heavily in favor of granting a stay.

### B. Simplification of Issues

Defendants argue that the IPR petitions will simplify the issues in this case because the PTAB is likely to invalidate all relevant claims of the '670 patent. Although it is possible that the PTAB could do so, *see,e.g., VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1314 (Fed. Cir. 2014), the Court does not make

such an assumption in deciding this Motion to Stay. But, even in the absence of total invalidation of Plaintiff's claims, the PTAB may invalidate some claims and simplify the case. *See, e.g., Service Solutions U.S. LLC v. Autel. US Inc.*, 2015 WL 401009, at *3 (E.D. Mich. Jan. 28, 2015). If the PTAB invalidates some (or all) of the claims, the issues will be streamlined for the parties and the Court, which could mean the elimination of the need for: (a) some or all discovery; (b) *Markman* proceedings; and (c) trial. *Id.* at *2 ("a stay pending the IPR would avoid potentially wasteful discovery while narrowing the issues in the case"). The Court also notes that the IPR record will become part of the '670 patent's intrinsic record, which could help in the parties' and the Court's analysis of the claims. *Skip Hop, Inc. v. Munchkin, Inc.*, 2016 WL 7042093, at *3 (C.D. Cal. Mar. 15, 2016). Even if no IPR petition is instituted, the parties and the Court will know the full scope of the claims at issue.

For all of these reasons, the Court finds that issuing a stay pending the IPR petitions likely will simplify – and will clarify – the issues in this case and this factor favors granting a stay.

### C. Undue Prejudice

Plaintiff argues that a stay would unduly prejudice or present a clear tactical disadvantage to Plaintiff, primarily for two reasons. First, and most significantly, Plaintiff states that the '670 patent expires in 2023, and a stay will delay the

8

adjudication of the claims and cause Plaintiff lost time before expiration of the patent. *P&G v. Team Techs., Inc.*, 2013 U.S. Dist. LEXIS 128949, at \*\*6-7 (S.D. Ohio Sept. 10, 2013) ("[B]ecause Plaintiff's patents expire in 2017, a stay would erode the limited period for which Plaintiff may claim permanent injunctive relief if liability is established."); *A.R. Arena Prods. v. Grayling Indus.*, 2012 U.S. Dist. LEXIS 100164, at \*1 (N.D. Ohio June 25, 2012) (denying motion to stay where patent was only alive for 5 more years and a stay would prejudice plaintiff), adopted by *A.R. Arena Prods. v. Grayling Indus.*, 2012 U.S. Dist. LEXIS 194918 (N.D. Ohio, Oct. 10, 2012). Plaintiff also argues that a stay would harm Plaintiff because Abbott directly competes with Plaintiff in the field of implantable wireless heart failure monitoring devices (Plaintiff's TITAN WIHM device and Abbott's CardioMEMS HF System).

The Court is not persuaded that Plaintiff will be unduly prejudiced by a stay of the proceedings, at least before the PTAB announces whether it will institute Defendants' IPR petitions. First, Plaintiff does not have a product on the market – or a product that has been approved for sale anywhere in the world – utilizing the '670 patent. As Plaintiff states, at this time, Plaintiff "is in the process of applying for and obtaining its CE Mark certification for use of its TITAN WIHM device in Europe. . . . [Plaintiff] expects the process to take approximately 6-8 months." ECF No. 30, PgID 1314. Accordingly, when and whether Plaintiff will have a product on the

market that will compete with Abbott's CardioMEMS HF System is speculative. A plaintiff cannot establish that another party is a competitor or claim that it has lost profits if the plaintiff does "not currently have a product line on the market." *Cannarella v. Volvo Car USA LLC*, 2016 WL 9450451, at *14 (C.D. Cal. Dec. 12, 2016).

Second, even if the PTAB institutes Defendants' IPR petitions, Plaintiff has acknowledged that it will not have a product on the market until, at a minimum, after the PTAB makes that decision. Third, although Plaintiff was negotiating with Abbott for an extended period of time, both before and after Abbott acquired the CariodMEMS HF System, Plaintiff could have instituted this lawsuit at any time, particularly if Plaintiff's concern was competition. Plaintiff could have filed suit against: (1) St. Jude's (before Abbott acquired St. Jude's), as long as five years ago; or (2) Abbott (since the acquisition on January 4, 2017), two years before filing this case. *See, e.g., Cequent*, 2015 WL 1510671, at *3 (no prejudice where the "accused products had been in direct competition with Cequent's products for years before Cequent filed its Complaint"); *VirtualAgility*, 759 F.3d at 1319 (no prejudice where plaintiff "waited nearly a year after the '413 patent issued before it filed suit against Defendants").

For the reasons stated above, the Court finds that this factor also weighs in

favor of granting a stay.

## IV. CONCLUSION

Accordingly, for the reasons stated above,

IT IS HEREBY ORDERED that Defendants' Motion to Stay [ECF No. 28] is GRANTED.

IT IS FURTHER ORDERED that all pending matters before this Court, including, without limitation, Plaintiffs' Motion for Leave to Seek Contested Venue Discovery and Defendants' Motion to Dismiss, are stayed until further Order of the Court.

IT IS FURTHER ORDERED that, within 14 days of the PTAB's decision whether to institute the IPR, the parties shall file a joint status report with the Court that advises the Court of the PTAB's determination on institution under 35 U.S.C. § 314.

IT IS ORDERED.

Dated: August 12, 2019
                              s/Denise Page Hood
                              DENISE PAGE HOOD
                              United States District Judge